Whitaker, Judge,
dissenting:
Plaintiff was discharged for “Unsuitability because of Immoral Conduct.” The specifications of such conduct were, first, abnormal sexual conduct with a specified woman and with others unnamed, and, second, false statements under oath.
After a total of eleven hours of interrogation, on two occasions at Fort Devens, Massachusetts, and on two successive days at Letterkenny Ordnance Depot, plaintiff admitted having had abnormal sexual relations with a named woman, which he described in some detail, and having had other abnormal relations with other women. On March 17, 1959, he signed and swore to a statement consisting of questions put to him by the interrogators and his answers thereto.
Three days later, on March 20, 1959, after having sought the advice of counsel, he repudiated his March 17 statement in a sworn statement reading as follows:
* * * all statements made and signed against myself and Miss [Jane Doe] are false. These statements were made under extreme mental pressure, false allegations, and threats of perjury; that I am a disabled veteran and that my nervous set up is such that I cannot stand long interrogations and prolonged pressures; * * *.
The Letterkenny Ordnance Depot sustained both specifications and determined that the charge of “Unsuitability because of Immoral Conduct” had been shown.
The Regional Director of the Civil Service Commission held that the charge of “Unsuitability because of Immoral Conduct” had been proven, and it sustained plaintiff’s removal. The Board of Appeals and Review of the Civil Service Commission affirmed this decision.
Both the majority of this court and our Trial Commissioner who tried the case are of the opinion that no “Unsuit *161 ability Because of Immoral Conduct” lias been shown and that the Letterkenny Ordnance Depot and the Civil Service Commission were arbitrary and capricious in so holding. I think “Unsuitability Because of Immoral. Conduct” has been shown. To say the least, I am unable to see how it can be said that the Depot and the Civil Service Commission were arbitrary and capricious in so holding.
Plaintiff was held by these governmental agencies to be unsuitable as a Government' employee because he had been guilty of conduct which they considered so immoral as to render him “unsuitable” as a Government employee, because, for one reason, he had been guilty of abnormal sexual relations with the woman he had named in his March 1Y statement. I cannot agree with this, because his guilt was shown ■only by his uncorroborated confession, which he later repudiated, but I do agree that his sworn statement that he himself had been guilty of such conduct, if he was innocent of it, and, especially, to have branded a woman whom he named as one also guilty of such conduct, is immoral conduct, and renders him “unsuitable” as a Government employee.
But, it is said, he did so only after hours of interrogation, and that he was deaf and that his nervous condition could not withstand “long interrogation and prolonged pressures.” Some say that this excused him. Excused him for confessing such conduct when he was innocent of it ? Most men would have had their arms tom from their sockets before they would have confessed to such conduct of which they were not guilty. A false confession of such conduct, is that not immoral ? It certainly would be for the normal man. The Government has but one code of moral conduct to which its employees are expected to conform, and this applies to the weak as well as to the strong. It has a right to expect of its employees such conduct as is expected from a normal man. If, because of his nervous condition or physical disability an employee commits an immoral act, an act that it would be immoral for a normal man to commit, is he not “unsuitable” as a Government employee?
"Whether his false confession of his own guilt of such conduct was immoral, how can it be said that plaintiff’s impli *162 cation in such conduct of a woman whom he named, was not immoral ? No self-respecting man, no decent man would have done so, whatever the pressure. If his statement was false, as he says it was, then he has blackened the name of an innocent woman. Is that immoral conduct?
If his statement was true, then he has been guilty of abnormal sexual conduct that is not only immoral but criminal under the laws of some, if not all, of the States. If his statement was true, then he lied under oath when he repudiated it. and undertook to excuse it.
The investigators subjected plaintiff to long interrogation and heavy pressure; plaintiff was evidently not a strong man; but this does not alter the fact that his conduct was so immoral as to render him “unsuitable” as a Government employee. This particular man may not have been able to resist committing the acts which certainly would have been immoral in a normal man, but, even so, the commission of them is nonetheless an immoral act and proves him to be unsuitable as a Government employee.
I may be wrong in the view I have expressed; the Letter-kenny Ordnance Depot may have been wrong; the Civil Service Commission may have been wrong; but how can it be justly said that they were arbitrary and capricious.
I respectfully dissent.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Donald E. Lane, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a citizen of the United States, was bom in 1920, and is a resident of Hagerstown, Maryland. Plaintiff served in the Army of the United States from 1943 to 1945. After serving in Normandy, a mine explosion in Germany aggravated a pre-existing condition of deafness, leading to plaintiff’s release on July 9, 1945. Plaintiff’s honorable discharge indicates that he was awarded the Purple Heart, the Bronze Star, and other decorations, and that he received head and knee wounds in action. Initially plaintiff was rated at 60 percent disabled, but this percentage of disability *163 has been gradually reduced. In 1955, when plaintiff was successfully fitted with a hearing aid, his disability rating was placed at 10 percent. Plaintiff attended Grover College and Milwaukee School of Engineering.
2. On July '5, 1948, plaintiff was employed as a dehumidi-fication unit operator at Letterkenny Ordnance Depot, Chambersburg, Pennsylvania. At some date thereafter plaintiff was transferred to the electronics branch and was given special training in the electronic aspects of missile work at the Fort Monmouth Signal Corps Depot, New Jersey, and also at Redstone Arsenal, Huntsville, Alabama. At the time of the events here in question, plaintiff was in class W-13, step 3, and was earning about $5,200 per annum as an electronic repairer. From 1955, plaintiff’s headquarters were at Letterkenny although he was on the road almost continuously working at various Nike bases in the eastern part of the country. Throughout the period of his employment at Letterkenny, plaintiff’s efficiency ratings were always satisfactory. In his work plaintiff was required to have, and possessed, a security clearance.
3. On March 3,1959, while plaintiff was on assigned temporary duty at Fort Devens, Massachusetts, he was approached by Kenneth Denaker, who identified himself as a criminal investigator attached to the Provost Marshal’s staff at Letterkenny. Denaker advised plaintiff that plaintiff’s name had come up during an investigation of charges against Miss Jane Doe, an employee at Letterkenny, and that he desired to question plaintiff, particularly with respect to his conduct with Miss Doe. Denaker advised plaintiff of his rights against self-incrimination under the Fifth Amendment. Plaintiff testified that he asked Denaker if he could have counsel and that he was told that he could not because the investigation was a security matter. When Denaker asked plaintiff at Fort Devens whether or not he had ever had intimate relations with Miss Doe, plaintiff invoked his constitutional privilege and refused to answer. Plaintiff denied ever participating in abnormal acts. Denaker prepared a statement, which was signed and sworn to by plaintiff at Fort Devens, in which plaintiff denied ab *164 normal acts and refused to answer any questions dealing .with intimate relations with Miss Doe.
4. When asked by Denaker, plaintiff voluntarily agreed to take a lie detector test. The lie detector examination was scheduled for the following day at the Boston Army Base, and was given by Warrant Officer James W. Keefe, a lie detector examiner attached to the Base. The actual examination took 8-5 minutes. Plaintiff was highly nervous. At its conclusion, the examiner advised plaintiff that he had deceived on examination. The examination was recorded but a copy has not been made available to plaintiff.
5* After the lie detector examination, Denaker returned and the statement plaintiff had signed the preceding day at Fort Devens was torn up. A new statement was then dictated to a secretary at Boston Army Base and was signed and sworn to by plaintiff before a summary court officer. This Boston Army Base statement is dated March 5, 1959, and is included in defendant’s exhibit 1 herein. In this statement he admitted having had sexual intercourse with Jane Doe, but denied she ever committed oral sodomy on him. The truth of this statement was denied by plaintiff under oath on March 20,1959.
6. Denaker reported the results of his investigation of plaintiff at Fort Devens, and at Boston Army Base to the Provost Marshal, Lt. Col. Henry T. Morgan, at Letterkenny. Morgan requested that plaintiff be called for further questioning. On March 16, 1959, plaintiff returned to Letterkenny and was again interrogated by Denaker during the morning. After lunch, the interrogation was resumed, with the Provost Marshal also in attendance. Plaintiff asked for counsel at this interrogation but none was provided. At the end of this session it was arranged that plaintiff would return the following morning for the preparation of a new statement. Plaintiff returned the following morning; Denaker called in a secretary, and a further statement was prepared. This statement was prepared by Denaker’s dictating questions. Denaker testified that he may have assisted plaintiff from time to time in finding a word for the answers. The secretary who typed the statement of March 17, 1959, testified that he took down in shorthand the questions read by Den- *165 aker, and that from time to time Denaker would supply a word to assist plaintiff. Denaker testified that his sessions of interrogating plaintiff may have totaled 11 hours. After the statement was typed, Denaker and plaintiff again went to the Provost Marshal’s office and reviewed the statement. Plaintiff placed his initials on various answers at the direction of Denaker or the Provost Marshal. Plaintiff signed and swore to the statement before the Provost Marshal. This statement is dated March 17, 1959, and also appears in defendant’s exhibit 1 herein. Plaintiff claims that both statements were signed under duress and that because of his physical condition he did not know the contents of the statements.
7. On March 20, 1959, plaintiff appeared before a notary public and executed the following affidavit:
* * * all statements made and signed against myself and Miss [ Jane Doe] are false. These statements were made under extreme mental pressure, false allegations, and threats of perjury; that I am a disabled veteran and that my nervous set up is such that I cannot stand long interrogations and prolonged pressures;
On March 23, 1959, plaintiff was again interrogated by Den-aker and the Provost Marshal. Plaintiff refused to answer any questions. Plaintiff was not permitted to have counsel present during the interrogations at Fort Devens, at Boston Army Base, and at Letterkenny Ordnance Depot.
8. On some date between March 17 and April 3, 1959, plaintiff visited John T. Johnson, Civilian Personnel Officer at Letterkenny. Plaintiff advised Johnson that he would deny the statements concerning Miss Doe. The Civilian Personnel Officer, the Deputy Director for Administration, and the Commanding Officer at Letterkenny together made the decision to prefer charges against plaintiff.
9. By letter dated April 3, 1959, plaintiff was given written notice of his proposed removal. This notice reads as follows:
Mr. Robert L. Scott
Electronic Shops Branch
Depot Maintenance Division
*166 Dear Sir:
This is a notice of proposed adverse action to remove you from the Government service for the following charge:
Unsuitability because of Immoral Conduct
In sworn statements dated 5 March 1959 and 17 March 1959, you admitted having intimate relations with Miss [Jane Doe] during the period 1949 to 1953. These intimate relations occurred during trips to Atlantic City in 1950; a trip west in 1951 which included stops in Ohio, Chicago, Detroit, Milwaukee and Niagara Falls; and a trip to Wildwood, New Jersey in 1952. Also by your own admission between the years 1945 and December 1958 you had visited a house of prostitution located outside of Hagerstown, Maryland on Route 40 which you identified as “Rita’s Snack Shack” approximately ten times and on two occasions had oral sodomy performed on you for which you paid a fee. Further, during the period 7-27-53 to 1-29-54 while attending an Army school in Huntsville, Alabama as a representative of the depot and while registered at the Hotel Yar-borough you admitted asking the elevator boy for a girl and that he sent a girl to your room and she committed an act of oral sodomy on you for which you paid a fee.
It is concluded from the investigation of your case that by your own admission you committed adultery with Miss [Doe] during the period 1949 to 1951. You also violated the Mann Act (Federal Law) by crossing state lines with a woman, not your wife, for immoral purposes.
You willingly submitted to a lie detector examination on 5 March 1959 by James W. Keefe, examiner at 8th MP Detachment (Cl), Army Base, Boston, 10, Massachusetts. This examination indicated your previous denials of abnormal sex relations with Miss [Doe] were untrue and supported several of the circumstances and acts described in your statements of 5 and 17 March and was not in conflict with any information contained therein.
It is expected that representatives of this depot will conduct themselves so as not to reflect discredit or bring disrepute upon the Department of the Army or the depot. The above actions on your part definitely show undesirable traits of character. Further, on 20 March 1959 you appeared before Roy E. Friedly, Waynesboro, Pennsylvania, a Notary Public and executed a sworn statement repudiating all sworn statements previously *167 made by you involving adverse information concerning yourself and Miss [Jane Doe]. This action on your part established the fact that you are not reliable or trustworthy, character traits required of Federal employees.
This action is being taken to promote the efficiency of the service. The Federal government must expect and require their employees to conduct themselves in a maimer which will reflect favorably upon their employer. This is of particular importance in your case because you [sic] job is connected with an important mission and involves official travel away from the depot.
This proposed action, if carried out, will become effective 8 May 1959.
You have the right to reply to this proposed action within ten work days from receipt and to furnish any affidavits and witnesses in support thereof. Your reply may be made personally and/or in writing to:
Mr. J. T. Johnson
Administration Building
Letterkenny Ordnance Depot
Chambersburg, Pennsylvania
Your reply will be carefully considered before final decision is made and a written notice of the decision will be furnished you.
During the notice period you will be carried in a work status.
EOS THE COMMANDER:
Sincerely yours,
J.T. JOHNSON
Assistant
10. Also, by letter dated April 3, 1959, Miss Jane Doe was given written notice of her proposed removal. This notice reads as follows:
Miss [Jane Doe]
Assistant for Supply Operations
Dear Madam:
This is a notice of proposed adverse action to remove you from the Government service for the following charge:
Unsuitability because of Immoral Conduct
Information has been obtained which indicates that jour conduct off the depot with Robert L. Scott and John W. Perry has been such as to show undesirable traits of character.
*168 During an investigation conducted by- tbe Depot Provost Marshal’s Office, Robert L. Scott, in a sworn statement, stated that you and he took several vacation trips between 1949 and 1953. On trips to Atlantic City in 1950, a trip to the west including stops in Ohio, Chicago, Detroit, Milwaukee, Niagara Falls in 1951 and Wildwood, New Jersey in 1952 he stated that you and he had intimate relations. Mr. Scott also stated that on these trips you and he had participated in certain abnormal sexual acts. Mr. Scott also stated that occasionally you and he had sexual intercourse in his car while parked on the street in front of your house.
’ In a sworn statement, dated 11 February 1959, John W. Perry stated that during the 2 year period prior to his marriage, you- and he had intimate relations and committed acts of oral sodomy and that these acts usually took place in the car. Mr. Perry also stated that almost every month during this period you and he committed oral sodomy on each other. Because of their repetitive nature and because of the circumstances under which they were committed, these immoral acts are particularly serious since they indicate a pattern of be-haviour rather than isolated, impulsive misconduct.
When confronted by these allegations, you at first offered denials to some of them but later refused on constitutional grounds to answer specific questions concerning the circumstances. This failure to confirm or deny the allegations leaves the depot no choice but to make a decision on the basis of available evidence. This evidence as indicated above consists of voluntary sworn statements from two different persons alleging first hand knowledge of the facts and which are substantiated by lie detector tests. Further, leave records of the depot indicate both you and Mr. Scott were absent from duty on the same days 49 times during the years 1949 through 1953. Accordingly, we have made a determination that these allegations are supported in fact and that there has been a definite showing of undesirable traits of character on your part.
This proposed action is being taken to promote the efficiency of the service. The depot expects and requires its employees, especially those in important positions like yours, to conduct themselves in a manner which will demonstrate trustworthiness and which will not tend to bring disrepute upon the Federal service.
This proposed action, if carried out, will become effective 8 May 1959.
*169 You have the right to reply to this proposed action within ten work days from receipt and to furnish any affidavits and witnesses in support thereof. Your reply may he made personally and/or in writing to:
Mr. J. T. Johnson
Administration Building
Letterkenny Ordnance Depot
Chambersburg, Pennsylvania
Your reply will be carefully considered before final decision is made and a written notice of the decision will be furnished you.
During the notice period you will be carried in a work status.
FOR THE COMMANDER:
Sincerely yours,
J.T. JOHNSON
Assistant
11. Plaintiff responded to the April 3,1959, adverse notice set forth in finding 9, with an affidavit dated April 11, 1959, denying the allegations of undesirable traits of character, requesting copies of his two statements, requesting copies of the depositions of witnesses, and averring that his two statements were obtained as the result of improper and unlawful threats, force, and. promises. Plaintiff was ultimately provided with copies of his two statements after his discharge from Letterkenny.
12. On May 20, 1959, plaintiff received the following letter, accompanied by a formal notification of personnel action on U.S. Civil Service form 50, advising plaintiff of his removal effective May 22,1959:
Mr. Robert L. Scott
Electronics Shops Branch
Depot Maintenance Division
Dear Sir:
This will refer to letter to you dated 3 April 1959 proposing your removal based upon the charge specified therein. After careful consideration of this charge and your reply thereto, it has been decided that the charge is supported by substantial evidence and warrants your removal. The general charge is Unsuitability because of Immoral Conduct. This is of two kinds; sexual misconduct and untruthfulness. With reference to the sexual aspect, your confession which was given in considerable detail was corroborated by a lie detector test *170 and was not given under duress or undue pressure. If the confession is deemed truthful, as we consider it, then your sworn statement denying the confession constitutes moral turpitude and further supports separation action. If the sworn statement denying the confession is, as you claim, truthful, then you have shown yourself to be entirely unsuitable as an employee since you voluntarily made derogatory statements about yourself and other persons which had no basis in fact. The sentence regarding the violation of the Mann Act is withdrawn from letter dated 3 April 1959. Standard Form 50 accomplishing the removal action is attached.
You have the right to request review of this decision under the grievance procedure as provided in Civilian Personnel ^Regulation K2 within ten work days from receipt of this letter. This request will be addressed to Commanding Officer, Letterkenny Ordnance Depot, Chambersburg, Pennsylvania. Or, you may elect to appeal to the Director, Third U.S. Civil Service Commission,. Philadelphia 6, Pennsylvania within ten days after the effective date of this action. This time limit may be extended by the Commission only upon a showing by you, in your written appeal, that circumstances beyond your control prevented you from filing within the prescribed ten day period. If you utilize the Department’s grievance procedure, you may forfeit your right to appeal to the Commission, since such appeal must be submitted within ten days from the effective date of your removal. If you appeal to the Civil Service Commission you may not have your case reviewed under the Department’s grievance procedure.
Attached is a statement showing the kind of information needed by the Civil Service Commission in order to consider any appeal you should decide to make under Section 14 of the Veterans’ Preference Act.
FOR THE COMMANDER:
Sincerely yours,
ELWOOD L. BOWMAN
Assistant
13. On May 29, 1959, plaintiff filed a notarized appeal of the adverse personnel action, stating in part:
* * * # *
REASONS FOR APPEAL
This appeal to the Civil Service Commission is instituted for the following reasons:
*171 1. The advance notice fails to show how the proposed adverse action will promote the efficiency of the service since there is no allegation that Scott is inefficient.
2. The advance notice of the proposed adverse action does not state all of the reasons for said action in that there is no showing that Scott’s removal is related to the proposed adverse action against Miss [Doe] or what the reasons for her removal might be.
3. The advance notice includes reasons for action incidents or information which were previously considered and resolved in favor of the employee as a result of his security clearance.
4. The incidents and events cited are not timely in relationship to the action proposed.
5. The request of Scott for copies of the sworn statements referred to and the results of the lie detector exam were denied.
6. The employee’s reply was not considered as is evident by the letter from the Commander to Scott’s Attorney dated April 13,1959.
7. The decision to remove Scott from Government service relies in part upon reasons or information which were not included in the advance notice. The advance notice refers to sexual misconduct while the decision refers to sexual misconduct and untruthfulness.
8. The Federal and State constitutional rights of Scott relative to the nature of the charges against him; his right to refuse to answer and the warning that anything he might say will be used against him, and the right to freedom from undue coercion, force, threats, and pressures were denied him. In addition he was unlawfully arrested and detained for varying intervals of time on various occasions.
9. The only evidence against Scott is his conflicting sworn statements which were exacted from him under duress and which therefore are legally tainted and inadmissable.
10. Common law principles relative to laches, undue delay, and the various statutes of limitations would preclude consideration of matters five to ten years previous to the charges.
11. Scott was forced to incriminate himself in violation of his rights as hereinbefore set forth.
* * * * *
14. At the appeal hearing held June 30, 1959, under section 14 of the Veterans’ Preference Act of 1944, the plain *172 tiff was examined by bis counsel, Jay L. Benedict, Jr., and was cross-examined by Jerome J. Kloch, legal adviser for Letterkenny, and Lt. Col. Henry T. Morgan, Provost Marshal at Letterkenny. The only other witness was Thomas M. Jones, a clerk-stenographer at Letterkenny, who typed the statements of March 5 and March 17, 1959. At the appeal hearing there were no corroborating witnesses. Miss Jane Doe did not testify at this hearing.
15. On September 24, 1959, the Regional Director of the Third U.S. Civil Service Region upheld the removal of plaintiff from Letterkenny. On September 30, 1959, plaintiff directed an appeal to the Board of Appeal and Review, U.S. Civil Service Commission, Washington, D.C. The Board affirmed the decision of the Director of the Third U.S. Civil Service Region on April 29, 1960.
16. At the hearing before the director of the Civil Service Commission, Third Region, plaintiff denied that he had ever had any abnormal relations with Miss Doe. Plaintiff also denied making any Midwestern trip with Miss Doe, and denied visiting places mentioned in the March 17 statement. Miss Doe did not testify at the hearing before the regional director.
17. At the trial before the undersigned Commissioner, plaintiff again denied that he had ever had any abnormal relations with Miss Doe, denied making any Midwestern trip with Miss Doe, and denied visiting places mentioned in the March 17 statement. Miss Doe testified under oath at this trial that portions of the March 5 and March 17 statements describing relations with her were untrue and that the statements were lies. She also testified that she never made any trip to the Midwest with plaintiff, and that on the one trip to Atlantic City, on which plaintiff went along, she was accompanied by her family, including two sisters and her mother. Miss Doe’s testimony corroborates that of the plaintiff. Miss Doe is still an employee at Letter-kenny.
18. John W. Perry testified that he was at Letterkenny in 1946; that in February 1959 he was investigated by the Provost Marshal and Mr. Denaker; that the interrogations lasted three or four days, and that he signed a statement *173 (defendant’s exhibit 3) dated February 1, 1959, detailing abnormal conduct. Perry testified that he did not have legal counsel and that he signed the statement because he was befuddled or broken down, and that portions of the statement were not true. Perry resigned from Letterkenny shortly after the interrogations.
19. Since the date of his separation, from Letterkenny, plaintiff has made certain attempts to secure employment. However, his only experience is in the field of missile electronics, in which the Army had trained him. Private concerns in this field require employees who have or who can obtain security clearance. Upon learning of plaintiff’s difficulties at Letterkenny, all of the firms which he approached lost interest in employing liim. The only employment which plaintiff is shown to have had since his removal from Letter-kenny is temporary employment as a census enumerator.
20. The evidence herein establishes that the sole evidence of any immoral conduct on the part of plaintiff consists of two typewritten statements signed by plaintiff on March 5 and March 17, 1959, respectively. Plaintiff signed these damaging statements after extended interrogations during which plaintiff was not provided with counsel. Plaintiff promptly executed an affidavit on March 20, 1959, to the effect that the statements made against himself and Miss Jane Doe were false and were made under extreme pressure. Miss Doe has corroborated plaintiff in testifying such statements are untrue. The proofs are insufficient to accurately determine whether the damaging statements were the result of undue pressure on the part of the interrogators or the result of plaintiff’s service-incurred disabilities.
21. Plaintiff’s notice of removal, effective May 22, 1959, shows that at the time of removal, plaintiff was an electronic test equipment repairer, job number CG-6306, series grade W-2602-13, step 3, at a salary of $2.47 per hour (day) and $2.57 per hour (night). On a 40-hour-week basis, said salary at the day rate amounts to approximately $428.13 per month. The evidence does not show what sums plaintiff has received from other employment since his removal from Letterkenny.
*174 CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and judgment is entered to that effect. . The amount of recovery will be determined pursuant to Rule 88(c).
In accordance with the opinion of the court and with a stipulation of the parties, it was ordered on May 20, 1963, that judgment for the plaintiff be entered for $19,593.34, with $1,290.82 of said amount to be credited to plaintiff’s retirement fund, $3,058.80 to' be credited to plaintiff’s account with the Internal Revenue Service as taxes withheld, $555.75 to be repaid to the Department of the Army as a credit against the lump-sum leave refund given plaintiff upon his removal from his employment, and the' balance of $14,687.97 to be paid to the plaintiff.